# Hollis, et al. v. Weissinger, County Judge, et al.

(Decided February 8, 1911.)

## Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. Fiscal Courts—Appropriations—Purchasing an Automobile For Use on Public Roads.—The Jefferson County Fiscal Court having appropriated $4,300 for the purchase of an automobile for the use of its members in inspecting and supervising the county roads; $75 per month for a chauffeur to operate it, and $125 per month for its storage, and a further sum for electric fans in the county court clerks office, in an action by certain taxpayers of the county to enjoin its collection. Held, that the fiscal court under the general powers appertaining to the maintenance of the public highways conferred on it by statute has not the right to provide the committees of the court charged with the duty of inspecting or supervising road work with automobiles or conveyances of any kind to travel over the county in the performance of their duties.

2. Same.—However much the automobile may have contributed to the improvement of the public highways, and whatever might be its value to the fiscal court of Jefferson county, the several statutes from which the court derives its powers over the fiscal affairs and control over the public roads thereof, do not permit its purchase of an automobile or any other kind of vehicle for the use of members of the court, or any employe of the county, in the performance of any duty of inspection or supervision required of them.

3. Installing Electric Fans in Clerk's office.—We are of the opinion, however, that in making the appropriation for installing electric fans in the office of the county court clerk the fiscal court did not exceed its powers. Electric fans are in common use and recognized as a necessity in public buildings, and in this instance they were indispensably so.

ROBT. L. PAGE for appellants.

JOHN L. SULLIVAN and A. SCOTT BULLITT for appellee.

OPINION OF THE COURT BY JUDGE SETTLE.

Following appropriations by the Jefferson county fiscal court, out of the county's funds, of $4,300, for

the purchase of an automobile for the use of members of that court in inspecting and supervising the county road; $75 per month for the services of a chauffeur to operate the automobile; $25 per month for its storage and care in a public garage; also a sum sufficient to pay for casualty insurance thereon; and of a further sum sufficient to provide fans, operated by electricity, for the office of the county court clerk, the appellants, S. S. Hollis and R. O. Dorsey, who are taxpayers of Jefferson county, justices of the peace therein and members of the fiscal court, brought this action in the court below against appellees, the judge of the Jefferson county court and remaining justices of the peace, constituting, with appellants, the fiscal court of the county, to enjoin them and the fiscal court, as such, from expending the moneys or any part thereof so appropriated, to the purposes indicated or any of them. The injunction was asked on the ground that the several orders making the appropriations in question are void and that the fiscal court had neither jurisdiction nor power to so appropriate or expend the funds of the county.

Appellees by answer denied the alleged invalidity of the appropriations; averred the necessity therefor, and the jurisdiction and authority of the fiscal court to make them. Appellants filed a demurrer to the answer which the circuit court overruled and dismissed the action. From the judgment manifesting these rulings the latter have appealed.

It appears from the record that the fiscal court of Jefferson county is composed of the county judge and eight magistrates, four of whom are elected from the city of Louisville, and four from the county outside of the city. Four of the members of the court voted for the appropriations referred to, and only two, the appellants Hollis and Dorsey, against them. The county judge did not vote and could not have done so except in case of a tie; it is patent, therefore, that a majority of the members of the fiscal court present voted for the appropriations; but the question to be determined is, did the fiscal court have the power to make them?

It is argued for appellees that the fiscal court had the power to make the appropriations and that they were necessary. The latter argument, as applied to the fiscal court's need of the automobile, is based upon the theory that as there are about 500 miles of macadamized roads and 300 miles of dirt roads in Jefferson county, main-

tained at an annual expense of $70,000, all under the direct management of the fiscal court and committees composed of its members, the use of the automobile is required to enable the committees to travel quickly from place to place in inspecting and controlling the work of construction, reconstruction or repairing constantly under way, often in many different places at the same time, on the public roads of the county; and that the saving of time that would thus be made and the greater amount of work accomplished by the committees, would justify the cost of the automobile, the hire of the chauffeur and other expense attending its use, included in the appropriation.

This argument would be entitled to great weight, if the matter of the appropriation for the purchase of the automobile had been merely a question of necessity addressed to the discretion of the fiscal court; but it can have no effect upon our decision of the case, if the appropriation or expenditure of the county's funds by the fiscal court for the automobile, was unauthorized by law. If we reach the conclusion that the fiscal court was without power to so apply the funds of the county, the question of whether the purchase of the automobile was necessary need not be considered nor decided.

In considering the question here presented, it must first of all be borne in mind that the fiscal court is a court of limited jurisdiction, and, therefore, without power to appropriate or expend county funds, except as authorized by statute. Perhaps no clearer expression of our views upon this subject can be given than that stated in the case of Jefferson County v. Peter, 127 Ky., 453:

"Taxes may be levied for public purposes. They can not be levied for private purposes, although they may incidentally and indirectly benefit the public. Laws authorizing the appropriation of public funds will not be extended by construction beyond the natural and fair meaning of the words used. The powers of the fiscal court are derived entirely from the statute." Kline v. Jefferson County, 30 R., 1344; Morgantown Deposit Bank v. Johnson, 108 Ky., 507; Jefferson County v. Young, 120 Ky., 456; Mitchell v. Henry County, 30 R., 1051.

By section 1834, Ky. Stats., exercise of the corporate powers of the counties of the State are confided to the fiscal courts thereof. Section 1839 confers upon the fiscal court authority to impose and levy taxes, but the powers and duties of the fiscal courts of the State to make pro-

visions for maintaining the public roads in their respective counties are conferred by section 1840, Kentucky Statutes, which is as follows:

"The fiscal court shall have jurisdiction to appropriate county funds authorized by law to be appropriated; to erect and keep in repair necessary public buildings, secure a sufficient jail and a comfortable and convenient place for holding court at the county seat; to erect and keep in repair bridges and other structures and superintend the same; to regulate and control the fiscal affairs and property of the county; to make provisions for the maintenance of the poor and provide a poorhouse and farm and provide for the care, treatment and maintenance of the sick and poor, and provide a hospital for said purpose, or contract with any hospital in the county to do so, and provide for the good condition of the highways in the county, and to appropriate county funds to make provision to secure immigration into the county, and to advertise the resources of the county, and to appropriate county funds for the benefit of colleges and for infirmaries for the sick located in the county, and to execute all of its orders consistent with the law and within its jurisdiction, and shall have jurisdiction of all such other matters relating to the levying of taxes as is by any special act now conferred upon the county court of levy and claims."

In Jefferson County v. Young, 120 Ky., 456, we had before us for decision the question whether the fiscal court of Jefferson county had authority to appropriate, out of the county funds, $2,000 to be used in paying for certain maps which had been made by the county surveyor under a contract with the fiscal court. It was contended by the fiscal court that such authority was conferred by section 1840, and that the maps were required to enable the county assessor and his deputies to properly assess for taxation all lands in the county. We, however, rejected this contention, holding that although given authority by the section, supra, to levy taxes and supervise their collection, the fiscal court was without authority to assess the property of the county for taxation; that work being done by the county assessor for state purposes and his assessment, when supervised as required by law, used by the fiscal court as the basis for the levy of taxes made by it for county purposes; moreover, that the fiscal court derived no power from that section or any other provision of the statute, to employ

a surveyor to make maps or to purchase maps of land made by such surveyor, in order to enable the county assessor to fix the boundary of lands to be assessed for taxation in Jefferson county.

In commenting, in the opinion, upon the provisions of section 1840 of the statute, we in part said:

"It will be observed that the fiscal court is authorized by the statute to appropriate the county funds authorized by law to be appropriated; * * * and that it had jurisdiction of all such other matters relating to the levying of taxes as is by special act conferred on the court of claims or county court. It is impossible to read this section, which so carefully enumerates what the fiscal court may do, without concluding that the Legislature intended to restrict the fiscal court to the things named, and such matters as were incidental thereto. The power to regulate and control the fiscal affairs and property of the county must be read in connection with the other provisions of the section. If these words were intended to give the fiscal court unlimited jurisdiction over the fiscal affairs of the county, then it was entirely unnecessary to stipulate in such detail what powers the fiscal court might exercise. * * * If the fiscal court had made an order employing a man in each magisterial district, at an annual salary, to go around with the assessor and see that no property was omitted from assessment, it would hardly be claimed that this was within the power of the fiscal court, although the court believed that the additional revenue thus derived by the county would more than pay the expense."

We are unable, from our reading of the statute under consideration, to find that it empowers the fiscal court to appropriate county funds for the purchase of an automobile, or that such power may be inferred from the language used. The mere fact that it confers upon the fiscal court authority, "to provide for the good condition of the highways of the county," would no more give that court the power to purchase an automobile for the use of those charged with the duty of supervising work upon the highways, than does the provision of the statute conferring upon the fiscal court "jurisdiction of all such other matters relating to the levying of taxes as is by special act now conferred on the county court of levy and claims," confer upon it the power to purchase maps for the use of the assessor in assessing for taxation the lands of the county.

It is, however, insisted for appellees, that in addition to the power conferred upon the fiscal court with respect to public roads, contained in section 1840, Kentucky Statutes, other powers are given it in relation to such roads by sections 4318 and 4318a, Kentucky Statutes, and that all these sections, read together, confer on the fiscal court all the powers claimed for it.

Section 4318, which applies to roads maintained under the tax system, authorizes a road supervisor or overseer, on the order of the county judge entered of record, to "hire wagons, plows, scrapers and teams, and procure forage for same;" and to either "hire or purchase for the county such tools and implements as may be necessary and suitable to perform the work," which he may be having done "by hired hands, delinquents or convicts." The section further provides how the tools and implements shall be kept, makes the supervisor responsible on his bond therefor, and requires him to "keep duplicate orders and report to the court at its September term each year an itemized account of all moneys expended by him for the foregoing purposes."

Section 4318a provides that the fiscal court in each county, wherein the dirt and gravel roads are worked by hands allotted to same, shall have the right to purchase out of the road and bridge funds of the county and furnish to each overseer of roads such tools, as the county court may think proper to be used in keeping the roads in repair, and defines the duties of the overseer with respect to their preservation.

It will readily be seen that neither of the sections last mentioned confers upon the fiscal court the power claimed for it by counsel for appellees. Section 4318 only allows the road supervisor or overseer upon the order of the county judge to hire wagons, plows, scrapers and teams for use on the public roads, and either to hire or purchase for such use, such tools and implements —the latter term including plows, scrapers and rollers— as may be necessary and suitable to perform the work required. Section 4318a only allows for overseers and their allotment of hands, the purchase by the fiscal court of such tools as it may think suitable for use in keeping the public roads in repair. We do not find in either of these sections, in section 1840 or elsewhere, any authority given the fiscal court to purchase a wagon or other vehicle to be used in maintaining the public roads of the

county; it may hire, but can not purchase, a wagon or other vehicle for such purpose, and if no power exists in the fiscal court to purchase a wagon or other vehicle for use in keeping in good condition the public roads of the county, upon what theory can it logically be claimed that it may purchase an automobile for the use of members or committees of the fiscal court to travel over the county to inspect its roads or supervise work thereon.

If the declaration contained in section 1840 of the statute, requiring the fiscal court to "provide for the good condition of the highways of the county," conferred on that court all the authority claimed by appellees for it, the Legislature would not have gone to the labor and trouble of specifying in such detail, as in sections 4318 and 4318a, what powers with respect to the purchase of tools and implements for use on the public roads, it might exercise. Obviously, the provisions of the two sections last named are in the main but limitations upon the general power conferred on the fiscal court by section 1840.

It appears from the record that the public roads of Jefferson county are maintained by taxation, and that much of the work of constructing, reconstructing and repairing them, is done by contract under the supervision of overseers or committees appointed by the fiscal court from among its members. A civil engineer is employed by the fiscal court to prepare plans and specifications for road and bridge work and men are employed to make measurements of stone or other metal used on the roads and to perform other necessary duties connected with road work; all such persons the fiscal court may lawfully employ and compensate under the general powers appertaining to the maintenance of the public highways, conferred on it by statute, but it has not the power or right to provide the civil engineer, other employes or committees of the court, charged with the duty of inspecting or supervising road work, automobiles or conveyances of any kind to travel over the county in the performance of their work or duties. As well argued by counsel for appellants, if the fiscal court has authority to purchase an automobile for a committee of the court, it may purchase one for the use of each member of the court upon whom it has imposed the duty of inspecting work done on the roads of the county.

It may not be improper to say, that when the several statutes from which the fiscal courts of the State derive

their powers, were enacted, the automobile was not in common use, it could not, therefore, have been contemplated by the Legislature that the use of such a vehicle would be necessary in keeping in good condition the roads of the state. That the automobile has rendered conspicuous service in awakening a sentiment favorable to the improvement of roadways in every part of the country, can not be questioned, and this is so because automobiles can only be used where the roads are in good condition.

But however much the automobile may have contributed to the improvement of the public highway and whatever might be its value to the fiscal court of Jefferson county, the several statutes from which that court derives its powers over the fiscal affairs of that county and control over the public roads thereof, do not permit its purchase of an automobile or any other kind of vehicle for the use of members of the court or any employe of the county, in the performance of any duty of inspection or supervision required of them. If we are correct in the conclusion that the fiscal court's purchase of the automobile was unauthorized and illegal, it necessarily follows that the appropriations for paying the chauffeur, the casualty insurance and garage storage, were also unauthorized and illegal.

We are of opinion, however, that in making the appropriation for installing electric fans in the office of the county court clerk, the fiscal court did not exceed its powers. Section 1840, Kentucky Statutes, makes it the duty of that court to erect and keep in repair necessary public buildings, a sufficient jail, and a comfortable and convenient place for holding court at the county seat. The county court clerk's office of Jefferson county is in the courthouse and near the chamber in which the sessions of the county court are held.

It appears from the record that it is largely filled with the many records that would naturally accumulate in a clerk's office having the great amount of business that is transacted in a county like Jefferson, containing as it does, Louisville, the largest city in the State. In addition it further appears that the work of the office requires the assistance and presence of many deputy clerks and that the office is almost constantly occupied by a large number of persons having the right to be there on business; also that the ventilation of the office is such as to often make the atmosphere therein, especially in warm

weather, impure and conducive to ill health. Such being the situation in the clerk's office and the fiscal court, being advised from the facts before it that the placing of electric fans therein, would greatly ameliorate the existing conditions and add to the comfort and health of the office force and persons constantly thronging the office on matters of business, we think it properly made the appropriation in question.

Electric fans are in common use and recognized as a necessity in public buildings, and in this instance they were indispensably so, because of the unusually uncomfortable and unhealthy conditions referred to and the great number of persons affected thereby. As the clerk's office is a part of the Jefferson county courthouse we know of no provision of the statute that would prevent the fiscal court from furnishing it with heat, light, electric fans or other appliances for the comfort and convenience of the clerk, his office force and others having business therein, as it does the court rooms, halls or other parts of the courthouse. Indeed, the duty imposed upon the fiscal court by the statute to care for and make comfortable and convenient the courthouse, in our opinion conferred upon it authority to place the electric fans in the clerk's office; and the matter being one that addressed itself to the discretion of that court, no reason is perceived for declaring the appropriation for the fans, an abuse of such discretion.

In Simons v. Gregory, 120 Ky., 123, we held that the fiscal court of Jefferson county, under the general statutory power requiring it to care for and make comfortable and convenient the courthouse, had the power to place in the courthouse, and pay for, an elevator, it being necessary as a convenience in such a building.

For the reasons indicated the judgment of the circuit court, in so far as it refused the injunction preventing the furnishing of the electric fans for the clerk's office, is affirmed, but in other respects it is reversed and cause remanded, with directions to that court to grant the injunction restraining the fiscal court from purchasing or making an appropriation for the purchase of the automobile and other expenses incidental to its use.

Whole court, except JUDGE MILLER, sitting.